Lea & Langdon *vs.* the Branch Bank of Mobile.

LEA & LANGDON *VS.* THE BRANCH BANK AT MOBILE.

1. A legal title to a note, payable to the order of the maker, can only be derived from his endorsement.

2. Such note is of no validity until endorsed; and until then, the maker cannot be sued.

3. But when endorsed, the note becomes perfect, and the party may be treated as the maker.

4. And if a subsequent endorser be sued, the holder may derive title to the paper, through the endorsement of the maker.

5. The Bank cannot, as endorsee of defendant, maintain a proceeding against one (not the maker) as the endorser of a note, made payable to the order of the maker.

6. And the certificate of the President of the Bank, that the paper sued on is really and *bona fide*, the property of the Bank, will not of itself, give title to the Bank, of the paper sued on.

7. The Legislature, in requiring such certificate, did not intend a grant of power---only a limitation on a power already given.

8. On a demurrer to evidence, where the evidence is not sufficient to maintain the issue,---the court will not award a *venire facias de novo*.

[The case of Ramsey vs. Johnson, (Minor's Reports, 418,) is overruled, by the decision in this case.]

Bank notice, tried before *Pickens*, J.

On the second day of December, eighteen hundred and thirty-seven, a notice was served on the plaintiffs in error, informing them that at the then next term of the Circuit court of Mobile, to be held on the second after the

fourth Monday in October, the President of the Bank would move for judgment against plaintiffs in error, as the endorsers of a promissory note, expressly made payable and negotiable at the said Bank, which note bore date the first day of October, eighteen hundred and thirty-six, being made by A. Marvin as maker, payable three months after date, to the order of said A. Marvin, for the sum of six hundred dollars, and protested for nonpayment.

Attached to the notice, there was the following certificate:

" I, George S. Gaines, President of the Branch of the Bank of the State of Alabama, at Mobile, do hereby certify, that the note described in the foregoing notice, was, when the same was protested, and now is, really and *bona fide*, the property of said Branch Bank.

" Given under my hand this 2d day of January, 1838.

" GEORGE S. GAINES."

To this notice, the defendants below filed a plea, in the nature of *nil debit*.

The plaintiffs below, to sustain their issue, introduced a note, of which the following is a copy :

"Dollars 600.          Mobile, October 1, 1836.

" Three months after date, I promise to pay to my own order, six hundred dollars, for value received, negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile.

" A. MARVIN."

The said plaintiff produced in evidence the protest of a notary, by which it appeared, that the payment of said money was demanded at the maturity of the said

Lea & Langdon *vs.* The Branch Bank of Mobile.

the said note, at the place where the same was made payable; and refused: whereupon, the note was protested for non-payment, and notice given to defendants. It further appeared, that the defendants had received thirty days' notice of the motion; and it was shown, by the production of the certificate of the President of the Bank, that the said paper belonged to the Bank.

The defendants admitted that the note was executed by A. Marvin: that their indorsement appeared thereon, and that they had received due notice of non-payment. They also conceded, that the debt was really and *bona fide* the property of the Bank; but demurred to the evidence.

Annexed to the demurrer, there was a statement, that the plaintiffs offered to prove that the note in evidence was endorsed by Aaron Marvin, which evidence was not permitted to go to the jury.

The demurrer was ruled by the court, not sufficient in law, to bar plaintiffs' action, and judgment was therefore given against the defendants, on which they took a writ of error.

The plaintiffs in error assigned—

1. That the demurrer to the notice of the plaintiffs was overruled in the court below.

2. That the record does not disclose a case in which a motion ought to have been made or judgment rendered upon a motion against defendants.

3. That judgment was rendered for plaintiffs below on the demurrer to evidence, when the same should have been rendered for defendants.

8 P. 16

Lea & Langdon *vs.* The Branch Bank of Mobile.

4. That the court rendered judgment for damages, when the same ought to have been assessed by a jury.

*Campbell*, for the plaintiff in error.
*Gayle*, contra.

ORMOND, J.—The question presented to this court is, whether the plaintiffs below have such a title to the note as would enable them to maintain this action. The note being payable to the order of the maker, the legal title to it could only be derived from his endorsement. This endorsement being excluded from the jury, can the action be maintained?

It is maintained that the certificate of the President of the Bank, that the paper sued on is *bona fide* the property of the Bank, will authorise the maintenance of a suit in a case like the present. It is apparent that the legislature had no such intention. It was not intended as a grant of power, but as a limitation on a power already granted, and to prevent the Bank from being used as an instrument for the speedy collection of debts, which did not belong to it.

The question then is, whether the Bank can maintain a suit at law, without having a legal title to the instrument sued on. No part of the charter has heen referred to, as containing this power, except the one above adverted to: As it is shown that that clause does not give the power, and as the law is not controverted, that neither a corporation nor an individual can maintain an action at law, to recover a chose in action, it follows that the Bank could not sue, at law, in its own name, either

by this summary process, or otherwise, unless it had a legal title to the instrument sued on. The court, therefore, erred in overruling the demurrer.

It is, however, insisted, that this court can not render judgment for the plaintiffs in error, but must remand the cause, that a *venire facias, de novo,* may issue.

On a demurrer to evidence, the only enquiry that can be made by the court is, whether the evidence does or does not sustain the issue, and judgment must be rendered accordingly. It is true that when the evidence is so loose and uncertain that no correct conclusion can be attained, the court will award a *venire facias de novo.*

In the case of Gibson and Johnson vs. Hunter, (2 H. Blackstone, 209,) Lord Chief Justice Eyre, delivering the opinion of all the Judges, says—"In 'case no judgment can be given, what ought to be awarded? We answer that there ought to be an award of a *venire facias de novo* :—the issue joined between these parties, in effect, has not been tried; and the case of Wright vs. Pindar, is expressly in point, that another *venire facias* should issue."

So, in the case of Wheelwright vs. Moore, (1 Hall's Sup. C. Rep.) Judge Oakley delivering the opinion of the court, says—" When there is a demurrer to evidence, which is certain, as in the case of documentary proof, the practice is for the court to give final judgment, as on a special verdict; but where there is no certainty in the statement of facts proved, the court may award a *venire de novo.* In the present instance, it is evident that the whole merits of the plaintiff's case have not been disclosed, and I think it is competent for us, in the exercise of our dis-

cretion, to send the case to another trial. The purposes of justice would not be subserved by giving a peremptory judgment on this record."

Here, there is no uncertainty. The evidence is not sufficient to maintain the issue, unless we hold that the Bank can maintain the action, without having the legal title. For what purpose then should we award a *venire de novo.* But no such result can take place.

It is also insisted that no action can be maintained on the note in this case, as it was payable to the order of Marvin, the maker of the note.

Under the act of eighteen hundred and twelve, an endorser is authorised, after assignment, to maintain any action against the maker, which the payee could have maintained, and he is authorised to sue the endorser as in cases of inland bills of exchange.

When one makes a note payable to his own order, it is of no validity until endorsed, and until then he could not be sued; but by the indorsement, the instrument becomes perfect. If he alone is to be sued on it, he can be treated as the maker of a promissory note. (See Roach vs. Ostler—1 Manning & Ryland, 120.) If any subsequent indorser is sued, the holder may derive his title to the paper through the indorsement of the person making the note payable to his own order. (See Chit. on Bills, 25—Smith vs. Luske, 5 Cowen, 708—Cooper vs. Meyers, 10 Barnwell & Cresswell, 468—Hazlehurst vs. Pope, 5 Stewart & Porter, 197.)

The case of Tindall vs. Bright, (1 Ala. Rep. 103,) has been supposed to militate against this doctrine; but this point does not arise in that case. The point there de-

termined is, that no action can be maintained at law, where one of several co-obligors is also an obligee in the bond.

The case of Ramsey vs. Johnson, (Minor's Rep. 419,) is in conflict with the decision here made, and in the case cited from 5th Stewart & Porter; and is to be considered hereafter as overruled.

The judgment of the Circuit Court is reversed, and judgment entered here for the plaintiffs in error.